Tom Carey. Yeah. Okay. We're gonna go here today. Wow. Well, you know, as soon as you get up there, everybody leaves. Okay. May it please the court. Good morning. My name is Gail Johnson from Albany and Myers. I'm here with my co-counsel, Dan Booken, and we represent Charles Jackson, the appellant. Okay. I'd like to reserve two minutes for rebuttal, if I may. Sure. The district court dismissed Mr. Jackson's pro se civil rights complaint, Anderson v. Connor, on the grounds that he could prove no set of facts that would entitle him to relief. That ruling was an error for several reasons, as we've fully briefed. But I'd like to begin today with the 14th Amendment due process issue, because as the Supreme Court stated in Wolf v. McDonnell, the touchstone of due process is the protection of the individual from arbitrary state action. And it's hard to imagine a more obvious case of arbitrary state action than what happened to Mr. Jackson. He was found guilty of violating prison rules after a procedurally flawed hearing. A substantial punishment was assessed, including a one-year term of solitary confinement in the Security Housing Unit, or SHU. But before he was sent to the SHU, Mr. Jackson appealed, and before he was sent to the SHU, that appeal was granted, voiding the guilty disposition. But prison officials ignored that order, granting Mr. Jackson's appeal, and they sent him off to the SHU anyway, where he languished for five months. This is the kind of extreme denial of due process I think is reminiscent of Alice's Adventures in Wonderland and the trial of the Knave of Hearts there, where the Red Queen says, sentence first, verdict afterwards. And it's because it's such an extreme denial of due process that I think we get to the primary reason why the district court's ruling under Sandan was an error, because under this Court's precedent in Burnsworth and Nanette, the Sandan test, the atypical and significant hardship test for when you state a cognizable liberty interest, is not applicable when you have a sheer denial of due process such as occurred here. Now, prison officials try and distinguish Burnsworth and Nanette by saying those are limited to some evidence cases where there's a lack of any evidence to support the finding, and that's not the case. So is this a procedural substantive in this sheer due process? Is this a third brand of due process that we're dealing with? Your Honor, I think sheer denial of due process is a subset of procedural due process. So I think it's distinct from substantive due process, and I think it's part of Mr. Jackson's procedural due process claim. And I believe the language in Burnsworth and Nanette both track procedural due process language. So it's still a deprivation of this Sandan-established liberty interest by a lack of an appropriate procedure that is the appeal. So is that where you go with that? Yes, Your Honor. I think Burnsworth applies Sandan and recognizes that the Sandan test for when there's a liberty interest that's recognizable by the Federal Due Process Clause, that test is a general test. And as Burnsworth and Nanette explain, you don't need to apply that test when you have such an extreme denial of due process. I would submit that there are sort of four examples in the disciplinary context when you have such a sheer denial of due process. When there's no charge, when there's no hearing, when there's no evidence presented at the hearing to support a guilty finding, or when there's no guilty finding. All four of those things happen to Mr. Jackson. His prior disposition was voided automatically when this appeal was granted. And again, that happened before he was sent off. I think even if you apply the Sandan test to Mr. Jackson's claim, the district court also erred, primarily because we're here on the dismissal under Rule 12b-6. The district court's ruling essentially means, as a matter of law, that 154 days in Corcoran Shoe can never give rise to a liberty interest under Sandan. But as this Court's ruling in Keenan v. Hall teaches, the Sandan inquiry is really a fact-by-fact, case-by-case specific inquiry that requires a detailed factual record. And I think many of the cases, Federal cases, applying Sandan dismissing ultimately affirming dismissals are on summary judgment. Was he in general population before the incident? Yes, he was, Your Honor. Then he was temporarily placed in administrative segregation. Yes, Your Honor.  Yes, to the Shoe. And as Mr. Jackson has alleged, the reason he was transferred to Corcoran is, although the California State prison system has in excess of 30 different institutions statewide, there are only three institutions that have a Shoe. And I think that right there is an example of what an extreme deprivation of liberty it really is. You know that in the past, oh, I think it's like 25 years, California has built two dozen new State prisons. Did you know that? I was not aware of the precise number. And we've built one State university. It's my campaign platform. I'm in full agreement with Your Honor. Returning for a moment to the district court's application of Sandan. I'm not getting the papers. Arnold might read that. I hope he does, Your Honor. There are three factors that the courts look at under Sandan to determine whether that test is met. And one of them is whether the prisoner has alleged material differences between the conditions in administrative segregation and Shoe. Mr. Jackson has done that. And I think that's the primary reason that this case is distinguishable from this case that does affirm a dismissal. But in that case, the prisoner made no such allegation. Similarly, in Resnick, the prisoner in that case made no allegation that the confinement he was challenging caused a major disruption in comparison with the conditions in general population, which is the proper baseline for comparison under Ninesucker precedent. I think liberally construed, Mr. Jackson's complaint is sufficient under our notice pleading standards to state a liberty interest even under the Sandan test. But in the alternative, we are asking for leave to amend if the Court finds otherwise. Thank you. Could I turn briefly to the First Amendment? Oh, sure. And then I'll reserve some time for rebuttal. There's no dispute that prisoners have a First Amendment right to petition the government for redress of grievances, nor is there any dispute that that right encompasses the right of prisoners to petition prison officials through means of a prison grievance system such as the disciplinary appeals process that Mr. Jackson invoked here. This First Amendment right must be adequate, effective, and meaningful. Now, prison officials have argued that, well, he had access, that's enough. But I would urge the Court to consider the Ninesucker's opinion in Bradley, where there's a regulation that prohibits prisoners from using hostile, abusive, sexual or threatening language in a written grievance. This Court held in Bradley that's a violation of the First Amendment, and they rejected the government's argument there that, well, they were allowed to write grievances, so that's enough. Do you think you alleged a retaliation claim? We're not urging a retaliation claim exactly, Your Honor, although I think the words punitive when they when he was transferred to to Court Grant S.U. He does. I think similar to a retaliation claim, there's a potential here for a chilling effect, namely if this were to happen all the time and your grievance, even when you're successful, you persuade the prison officials, your appeal is granted, but it doesn't have it doesn't matter. You still go off and be punished. Anyway, I mean, the prisoners would probably stop filing these, and that's sort of a chilling effect on their right to petition the government. I see my time is running down, so I'd like to reserve for the public. Thank you. Good morning, Your Honor. Song Hill, deputy attorney general from the California Attorney General's Office. Representing the prison officials, they're the police and defendants in this matter. Am I right on that? We've built two dozen State prisons? I asked 24 to check on that. I can't. I don't know, Your Honor. Cochran's S.U. could have been Cochran State University, but something else. We urge the Court to affirm the district court judgment here because the district court correctly applied send-and-test and found that Mr. Jackson's confinement in the Cochran S.U. did not create a due process liberty interest. I would first address the issue regarding whether send-and-applies. Send-and-applies, this Court differs from Bernthorst in that in Bernthorst, the prisoner was challenging the underlying disciplinary finding. He is not challenging the conditions of confinement. Mr. Jackson here is challenging that particular confinement, that is, the placement in the S.U. Therefore, Bernthorst or Nonet or that line of cases do not apply. Is the condition of confinement claim, does it sound under the Eighth Amendment as opposed to the Fourth Amendment, when you're incarcerated and not a prisoner? There are two different, as the Court in Kenan realized that, there are two different sides, two different sets of law that may give rise to claims. One is due process. One is Eighth Amendment. The standards governing the two sets of principles are very different. Under due process, as send-and-articulate, there are three factors that has to be considered before an inmate can establish the claim under due process. The first is whether the challenge, the condition, or did the challenge confinement mirror the conditions of the discretionary confinement, such as administrative segregation or protective custody. The second factor the Court considers is the general population, though, wasn't he? He was in general population. He was being punished for having been involved in, or the attempt to punish him was for the altercation or whatever that was. That's correct, Your Honor. He was in general population. That's correct. By his allegation, yes. And he was moved, though, to administrative segregation for a period of time, pending the hearing. And he was sent back to administrative segregation after his placement in the SHU confinement. Let's just take this through for just a moment. You can help me understand the regulations there at the prison. But, you know, suppose that the appeal had been successful with the appeal, the administrative hearing, and the attempt to impose discipline upon him was not approved. Right. He would have gone back to general population, correct? You mean the initial? They moved him because of the altercation. They put him in administrative segregation. That's correct. But if they would have determined that he was not responsible or involved in the altercation or, you know, that he was beat up or something, I don't know. He would have gone back to general population? Not necessarily. Administrative segregation can be used for different reasons. It is if someone who poses an immediate threat to the safety or security of the institution, he may be moved to the administrative segregation. So if there's visit, we're talking about the judgment and discretion of the prison officials. So there's a possibility he may be moved back to the general population, but that's not always true. There's a great possibility he may be removed to administrative segregation as well. Your comparison was between administrative segregation at his home where he was at Salina State? He was in corporate. He was at CCI, California Correctional Institution. Okay. CCI. Yeah. Okay. He was at CCI. Tehachapi. In Tehachapi. That's where he was, in Tehachapi. But the only reason why he was moved, the only reason why he was moved, from what I could tell, was alleged in the complaint, was because of the altercation. Yes. But even when the disciplinary charge was pending, and he, by prison official, has discretion to move him from the general population to administrative segregation. And that was done here. But even if the final charge was ordered to be reheard, he can be still, if he hasn't been moved, he will be still at administrative segregation. That's a possibility. Because of his conduct, because of the charge, the counsel mentioned that the charge was void because of the order to be heard. That's incorrect. What is void is the disposition. He still has a charge of battery on a non-inmate pending at the time. So the inmate, the prison officials, still has the discretion, because of his behavior, because of his violence, to move him to the administrative segregation. And that particularly happened when he returned from the SHU at Corcoran. Well, why can't we also read his complaint, as Judge Beam mentioned, as a sheer denial of procedural due process? No, Your Honor, because he did the ---- He's punished. He just acknowledged that he was moved to Corcoran SHU because of the altercation. Because of his disruptive behavior, yes. But that's all ---- that's what the whole administrative proceeding was about. And the recommendation to move him to Corcoran SHU was by that person, the official at the prison, who was responsible for finding a placement after there had been a ---- the administrative charge had been upheld by the hearing officer. So he's just ---- he's just shipped off to Corcoran without having the opportunity to complete the administrative process to challenge the charge. Why isn't that a denial of due process? That seems like ---- that doesn't seem like a difficult one. And isn't the district court required to read a pro se Petitioner's complaint very generously? That's correct. But what his allegation here, if you are just talking about a transfer from a general population either to SHU or to administrative segregation, there's no constitutional right for an inmate to be housed in a particular environment that is established by the Supreme Court law and by the circuit law and by the district court. Why give these prisoners who are alleged to have been participated in any kind of altercation all this administrative process? Why don't they just ---- why didn't the prison officials just move him all over the place? That's where the sending issue comes in. That is, the punishment itself, or such as a discipline detention, may be, that's understand, atypical and create a significant hardship on the inmates in relation to his ordinary incidence of prison life. That may give to a due process violation. That's the first step to be established under the Supreme Court law. But your ---- so from your perspective, as long as they just, you know, don't move him to someplace that is significantly different from where he was, you don't need any procedural protections. You can just move him around. No, Your Honor. Under Hewitt v. Herman, there's two lines of cases. One is the Wolf type of cases. That is someone who is charged with a disciplinary ---- disciplinary violation. The due process is a Wolf type of analysis. You need to have a hearing prior to. But with regard to transfer, the Hewitt court v. Herman in that court said, no, the hearing doesn't have to be prior to. It could be held sometime after the transfer. And the due process required under that type situation is not as ---- the procedure that are required are not as ---- I guess they are not the same as the Wolf type protection. For instance, in Hewitt, all that is required is probably he can be ---- he can present his side of the story or before an officer, and there's no requirement of witness presence, and that's very different from Wolf. So that's two different types of issue. Ms. Hill, am I hearing you say that in the California system, a prisoner can be moved to administrative segregation for no reason, as long as it's administrative segregation, and that's a typical part of prison life, and it's only when you move to something beyond that, like punitive segregation, that there needs to be a reason established by a due process hearing? Yeah. Administrative segregation is sometimes a very easy ---- sometimes it's used as a casual phrase for all the type of administrative purposes. But by regulation, it says when an inmate's presence in the institution's general inmate population presents an immediate threat to the safety of the institution or other inmates and endangers the security of the institution or jeopardizes the integrity of an investigation and of a serious misconduct, alleged serious misconduct or criminal conduct, the inmate shall be placed in administrative segregation. So it does serve as also has this casual ---- it's a casual phrase, but also serves a particular reason. No, I'm not saying that they can be moved without any reason, but by regulation, they present an immediate threat to the safety. Again, this is ---- we're talking about a prison management issue here. We're not talking about, as counsel alluded, that this is a ---- is not a criminal who hasn't been charged, and here he is in the prison environment by supreme court law, and the deference shall be given to the prison officials. Thank you. The hearing can be at a difference depending on the reason why, and the hearing can be subsequent to and he or has to be before. But when he first placed into the administrative segregation, he said, well, you know,   I'm going to put you in isolation. So when you are moving from the administrative segregation, a no prior hearing needed, a subsequent hearing or subsequent review may be needed. That is the holding of the Hewitt v. Helm. Thank you, Your Honor. Okay.  Yes, Your Honor. Just quickly, on the initial point about Nanette v. Small, I wanted to make sure the Court understands that the Nanette, Mr. Nanette, was in fact challenging the conditions of confinement. That was the issue where the Sandin issue was addressed. And they applied Burnsworth and say, you do not need to apply the Sandin factors. This is a shared analogy process. You might want to keep your voice up a little. Oh, yes, Your Honor. Maybe I've lost the mic. Is that better? Yeah. Thank you. Thank you. Quickly, on the California prison system's discretion, Mr. Jackson has alleged that he was sent to the SHU to serve a definite term for punitive reasons as disciplinary punishment. That discretion is very limited. The only reason you can send someone to the SHU for a definite term, there are two reasons. One, if you've been found guilty of a serious rule violation. Two, if you committed a rule violation within the SHU, which is inapplicable here. In terms of the prisons, I see my time is up. Thank you, Your Honor. In terms of the discretion. I have some questions. Go ahead and make your point, and I have one or two questions. In terms of the discretion to place someone in administrative segregation in the first place, I would make a couple of points. First, that's not pure unfettered discretion in California. As two Federal judges have noted, I believe in the Northern District, and those in Castillo v. Gomez both distinguished Sandin on the grounds that the Hawaii prison system addressed in Sandin did involve total discretion to place inmates in administrative segregation. That's not the case in California. I was just going to ask, what is the --? Here they seem to have followed a procedural process. At least it was contemplated that they would go through this process before imposing a punitive decision and punitive treatment on him for this alleged misconduct. Yeah. That was contemplated by the recs? It certainly is, Your Honor. And I think what's the piece that's missing right now are the time limits that are imposed under the regulations. When you are pulled for a serious rule violation, when you're pulled from general population, you're supposed to be given notice, written notice within 24 hours of the Under no circumstances are you supposed to languish for five months in a SHU, again, where you cannot be incarcerated pending a disciplinary hearing in California under regulations. I understood the government's point to be that, or the State's point to be that as long as he got his hearing, it's okay. At any point in the process. I think it's a fundamental denial of due process if you get your hearing. First of all, Mr. Jackson never got a hearing. The charge was not reheard. It was simply dismissed. It was dismissed after all of the punishment had been imposed. I think that's exactly where the sheer denial of due process comes in in this case. If there are no further questions, thank you. Thank you very much. We appreciate your taking this matter on a pro bono basis. And the good, excellent representation you've given your client. Thank you. So thank you very much.
judges: Pregerson, Beam, Paez